Good morning, Your Honor. I'd like to reserve two minutes for rebuttal. I'd like to also introduce Mr. James Martin Rowe and Mr. Larry Severance, who with me represent Doris Green and her four children, Clarissa Chavez, Jose Amaya, Elicita Amaya, and Felicia Romero. Plaintiff is asking this Court to affirm the Devereaux decision, reverse Judge Whaley's order dismissing Green's Devereaux claims, and reinstate Green's Section 1983 claim that she was arrested, prosecuted, convicted, and sentenced on evidence that Detective Perez knew or should have known was false. We also ask this Court to reinstate Green's Monell liability claims. In 2001 You're not asking for reinstatement of the claims you voluntarily dismissed, right? No, Your Honor. Those were ancillary to Green's main claim, which was that Detective Perez knew or should have known on the day she was arrested that he was participating in a witch hunt that was yielding false evidence, and in particular, false evidence against her. In 2001, this Court en banc said that in order to demonstrate that a government actor has subjected a defendant to a conviction on false evidence, the defendant must at a minimum demonstrate two things. Either that the officer continued his investigation of the defendant despite the fact that he knew or should have known that she was innocent, or the officer used investigative techniques that were so coercive that he or she knew or should have known that those techniques would yield false evidence. While the case that you previously heard about focused more on prong two, Green's claim was focused on prong one. In fact, the Devereux case came down shortly after, several months after Green had filed her claims. As trial counsel for Green, we took this Court at its word and we began to assemble the evidence that demonstrated that Detective Perez knew or should have known by September 1, 1994, that he was eliciting, producing, finding evidence that was untrue. And thus, when Green appeared at his office for an interview in mid-September of 1994, he had an investigation that was corrupted either by his making up the evidence or his failure to recognize that the techniques that he was using was yielding false evidence. One of the things that Green did as a part of preparing her suit was to engage a police procedures expert, Dr. Robert Keppel. And Plaintiff Green gave Dr. Robert Keppel literally every police report and much of the records from the criminal cases produced in the witch hunt investigation. She also gave him the legal standard that was set forth by this Court in Devereux and asked his opinion. Dr. Keppel's report is produced at the excerpts of record, pages 3231 to 3308. So Green said, here's the evidence, here's the legal standard, and what would your opinion be? And some of what Dr. Keppel said is quoted in our briefs. But to summarize, what he said was that the evidence used to charge Green was obtained, created, and produced by Detective Robert Perez or by law enforcement personnel or by CPS or DSHS employees acting under his direction and often in his control. And Detective Perez, as a law enforcement officer, knew or should have known that the evidence he was obtaining and used was false. That's it. This record is confusing to me in all these orders, but the Keppel report played no part in the summary judgment, did it? It did play a part in that the judge said, well, knew or should have known. Well, what happened then was the judge had the report in front of him and he said, that's irrelevant. Knew or should have known is not the standard. Your expert has used a negligent standard. I don't agree with the Devereux case, so I'm going to ignore Dr. Keppel's report. Well, what I'm trying to get at, first, it's very clear Judge Whaley obviously didn't rely on the Keppel report. But in terms of granting summary judgment, even taking the Keppel report at face value wouldn't have affected his ruling on summary judgment, right? Probably not, because what he said was the trial court's – what the trial court said was what Detective Perez knew or should have known as a reasonable detective in 1994 is not relevant to whether Perez violated Green's constitutional rights. That's at ER 3428. What I'm trying to get at is here, Green followed Devereux. We followed what this court en banc said. And we got down to four weeks before trial, and what Judge Whaley said is, I don't agree with Devereux. I think the Devereux case embodies a negligent standard. He didn't say that. He said if Devereux – Devereux clearly doesn't mean negligence. He said it must mean something beyond mere negligence. And I think the label he put on it was deliberate indifference. Might be right. Who knows? But the thing is, he said it certainly is not a pure negligence standard, correct? He said – and we agree, it's certainly not a pure – He said it couldn't be a negligence standard. Absolutely. That's what he said. But he also said that we didn't – And you don't challenge it in that interpretation. He's correct. I – he is absolutely correct that it is not a negligence standard. And we know that that is what the Supreme Court has said at the baseline. Section 1983 requires something more than negligence. In this Court, in Devereux, this Court said that's something that the test was new or should have known, and that is a – not a negligence standard. Judge – Judge Whaley simply said, I don't agree with that formulation by the Devereux Court. I think it is. Not even the defendants here argue that the Devereux standard is wrong. Did you want to say – I do. I simply want to say that they say that the judge followed Devereux. And it's absolutely clear from those portions of the record that we quote here that Judge Whaley even reminded that this circuit had the final say on what the standard should be. Disagreed with that and said, no, it's got to be something more than that. As a result, I'm dismissing Green's claims. Thank you. I'll reserve whatever remaining time I have for about a minute. You have three minutes. Thank you. Thank you, Your Honor. Your Honor, the court's correct. As the Justice just pointed out, Judge Kempel – or, excuse me, Judge Whaley did not at all disagree with the standard set forth in Devereux. What the judge was saying and articulating is that language new or should have known could potentially be problematic when plaintiffs attempt to use it, as they did in this case. And that is, use language new or should have known to prove a constitutional violation, hire a $500-an-hour purported expert, and say, you should have known – you knew or you should have known that you were violating the Constitution. Therefore, we get to a jury. And that's the standard. The court, Judge Whaley specifically, and I cited him in our brief, said that although it may be a nice negligence report, in my opinion, it's not one that meets 1983 in my judgment. And that's why he's not being permitted to testify, because I don't think it meets the requirements of Section 1983. Judge Whaley went on to say, so that the circuit knows, I don't think that a jury could find liability because Mr. Perez didn't do the things that the plaintiff suggests a reasonable officer would have done, which is go to check with CPS and other records before he interviewed Doris Green. If there is any obligation to have done so, even if some other officer would have done so, even if Keppel said I want to talk to Green only after I've done all that, that's not a 1983 claim. It may be a negligence claim. So what the judge did, and this Court hit it right in questioning counsel, what the judge did is made an evidentiary ruling on the eve of trial on a motion in limine supported or brought by the defendant saying that Keppel shouldn't be allowed to present negligence opinions in a 1983 claim. The judge exercised his discretion and said I'm not going to allow those types of opinions. Now, that was in effect an in limine ruling, wasn't it, in terms of trial? That's correct. On the Keppel, I'll call it the Keppel report. That's correct. The Keppel report wasn't proffered as part of the opposition to your summary judgment. No, it wasn't. No, it really played no part in the summary judgment. It was simply the judge had initially denied qualified immunity for Detective Perez. He was getting ready for trial. Getting ready for trial. What were you? Counsel, right? And maybe it's on that basis that the plaintiff voluntarily dismissed some of the claims, but what I'm getting at is the Keppel report was not offered at summary judgment. Is that correct? That's correct, Your Honor. The judge made the decision based on qualified immunity, whether or not, and followed Devereaux, and he says in the excerpt to the record that we put in our briefing that he did follow the Devereaux standard, the two-prong test, and he did analyze it according to the language that this circuit had sent down, and he said that there was insufficient evidence that he knew. There's no evidence that Detective Perez knew that he was lying or fabricating evidence about Doris Green because to this day he believes that she sexually abused children when she confessed to that crime. And then the question is, if you continue that investigation, is there anything wrong with continuing the investigation after you've had this confession with her? And Judge Whaley correctly said, no, there's nothing wrong with continuing the investigation. In fact, you have an obligation to go and talk to the victims and talk to other people, which is exactly what this investigator did. And then you analyze under the second prong of Devereaux when he's interviewing the victims, were there investigative techniques that were so coercive and abusive that he knew or should have known that they violated the Constitution? And again, the plaintiff presented no evidence, none whatsoever to the trial court, that any of the interview techniques violated the Devereaux standard. And so based on that, the judge granted Detective Perez qualified immunity, although it was soon before trial. And then the plaintiff said, well, if I can't use new or should have known the way we want to use it, they voluntarily dismissed all the remaining constitutional claims. When you say he granted a summary judgment on qualified immunity, first with respect to Perez, is that right? He – the chronology of the summary judgment orders? The chronology. Initially, he granted it for Detective Perez on conspiracy. He granted it for Chief Badgley. He granted Monell dismissal for the city when asked. And then he revisited qualified immunity under the Devereaux claims. With respect to Perez. Correct. But that was afterwards. Yes. After he had already ruled in favor of the city and the chief. Correct. It was in December. The order came out in December of 2003. Right. And then when you say – and then Judge Whaley reconsidered, right, with respect to Perez? Well, he – the reason he – he revisited the denial of qualified immunity that he had earlier done under just the Devereaux claims, whether the investigation violated Devereaux. And he granted Detective Perez qualified immunity just on the Devereaux claims. In part. He granted it in part. Correct. And he left intact plaintiff's opportunity. In fact, the judge painstakingly went through in his order and said, you still have these other claims, plaintiffs. And they nevertheless voluntarily dismissed those with prejudice. So you're correct, Your Honor. He only granted qualified immunity in part on what I classify as the Devereaux claims in December. So the claims, whatever they were that Judge Whaley emphasized that, well, to the plaintiff, you still have these claims left. Those were the claims that were voluntarily dismissed by the plaintiff. That's correct. Just before trial. That's correct. I'm just trying to get the chronology straight. So, Your Honor, I think without belaboring the point, if the court reads the analysis that Judge Whaley put into this case, being probably the most seasoned district court judge on the Devereaux cases, you can see that he absolutely applied the standard and the test articulated by this court. He did it methodically. He did it precisely. He weighed that test in light of the evidence that the plaintiff presented and said qualified immunity should be granted. And that should be affirmed. It shouldn't be reversed. It should be reversed on appeal. As far as claims counsel or appellants counsel also mentioned that they're seeking reversal of the Minnell decision that was granted by the court. I've briefed that extensively, and there's really – I just have a few minutes left, but I just want to touch on that. The court also found that Chief Badgley had no supervisory liability, found that he didn't possess the requisite knowledge that a supervisor needs to know. So, in other words, if you don't directly participate in the constitutional violation, do you know that your subordinate is violating the Constitution? The court correctly said that there was no knowledge on the part of Chief Badgley, and then the court said that he certainly wasn't deliberately indifferent to any of the issues raised by the plaintiff. He was properly trained. He was properly supervised. And there wasn't any deliberate indifference to any alleged constitutional violations, nor was there any personal knowledge that there was any constitutional violations. So Chief Badgley did not ratify anything that would hold the city of Wenatchee liable under the Minnell decision because he lacked that knowledge and didn't have direct participation. And what plaintiff wants to do is say, well, let me use this Keppel decision that I went out and got just on the eve of trial, and let me have Keppel then also say that there's a Minnell violation, there's a supervisory Section 1983 violation, because he puts his own self-imposed standard of care. And that's what Judge Whaley was saying when he exercised his discretion in not allowing that evidence in, that that doesn't fly. And also, by not considering that Keppel report, it would have to be an abusive discretion I submit for this Court to now consider Keppel as being appropriate evidence to overturn the 1983 decisions and the civil rights decisions made by the lower court. With that, Your Honor, I would respectfully request that the Court affirm all of Judge Whaley's lower court decisions. Thank you. Ms. Elliott. Thank you, Your Honor. The Keppel report was provided to the Court and to counsel two years before trial. The date is on the report that's in the excerpt of the record. What Judge Whaley said was in his decision in December of 2003 said, even though the Ninth Circuit used the term should have known, this Court must reconcile this phrase with prior precedent that states knew or should have known is a negligence standard and that proof of negligence claim is not enough. That's at ER 3428. Thus, this Court finds that what Perez should have known as a reasonable detective in 1994 is not relevant to whether or not Perez violated Green's rights. So what Judge Whaley said was you have to – Detective Perez has to admit that he made up the evidence in order for Green to have a Section 1983 claim based upon false evidence. And that's simply not the test laid out by this Court. What this Court said was that a reasonable officer knew or should have known. And in Devereaux and in Gosvick and in Cunningham, this Court said the plaintiffs had not presented enough evidence. So in order to show what a reasonable police officer should have known, Green went out and talked to a reasonable police procedures expert and asked him, what should a reasonable officer have known in 1994 in conducting these investigations? It's entirely proper evidence. It complies with the standards set forth by this Court in Devereaux. And it was before the Court well in advance of December 2003 when the Court reconsidered its ruling denying Detective Perez Section – or qualified immunity. On that basis, then, Judge Whaley did materially differ with the controlling circuit precedent on this issue and should not have dismissed Green's essential claim, which was that Detective Perez in all of his actions in regard to her proceeded on the basis of false evidence and that a reasonable officer should have known that he was doing so. As to the Monell claims, we have a case that came along long after the other cases that this Court has considered, and we have assembled a mountain of evidence regarding, much as Mr. Firkin stated, a mountain of evidence regarding Chief Badgley's failure to properly hire, train, and supervise Detective Perez. This Court should keep in mind that it's a rather small department. And I think the key fact is that even Chief Badgley admits that he reviewed every single one of the police reports that Judge Keppel reviewed, and not once did he seek to correct the abuses that were being perpetrated by Detective Perez. Thank you very much. We would ask that this Court reinstate Green's Section 1983 actions. Ms. Mack. Thank you, counsel. We thank both counsel for their fine arguments. And Green v. City of Wenatchee shall be submitted.
judges: Fernandez, Tashima, Gould